IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2004 Session

## AMY OWENS v. RONNIE OWENS

**Direct Appeal from the Chancery Court for Obion County**
**No. 23,754     William Michael Maloan, Chancellor**

_____

**No. W2003-03077-COA-R3-CV - Filed January 21, 2005**

_____

This is a divorce action. The trial court designated Wife as the primary residential parent of the parties' minor child and awarded Husband visitation. It also awarded wife alimony of $415 per month for 16 years. Husband appeals. We affirm designation of Wife as the primary residential parent and the award of visitation to Husband. We modify the alimony award to an award of rehabilitative alimony of $415 per month for a period of five years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., ALAN E. HIGHERS, J., joined.

W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellant, Ronnie Owens.

David L. Hamblen, Union City, Tennessee, for the appellee, Amy Owens.

### OPINION

The parties to this divorce action, Amy Owens (Ms. Owens) and Ronald ("Ronnie") Owens (Mr. Owens) were married in August 1990. One child was born of this marriage in January 2001. The parties disagree as to when they began to experience marital difficulties. However, it appears that disagreements over religion were a primary source of difficulty. Ms. Owens submits she is a life-long Pentecostal and "decided to renew her commitment to the Pentecostal faith [and] to practice more strict compliance with that faith." The parties separated on July 1, 2002, and Ms. Owens filed for legal separation on July 17, 2002. In her petition, Ms. Owen cited inappropriate marital conduct as grounds for separation and prayed for alimony and to be designated primary residential parent of the parties' minor child. Mr. Owens answered and counter-complained for divorce in August 2002. Mr. Owens prayed for a divorce based on irreconcilable difference or by stipulation and further prayed to be designated as the primary residential parent.

On August 14, 2002, the trial court entered an order finding no need to determine temporary custody and granting the parties equal custodial time with their minor child. The matter was heard in February 2003, and on April 14, 2003, the court entered a final order of divorce and parenting plan. The trial court designated Ms. Owens as primary residential parent and awarded Mr. Owens visitation beginning on Wednesday evening at 6:00 and continuing through Sunday evening at 6:00 every other week. The trial court entered a permanent parenting plan and awarded the parties alternating holidays. Mr. Owens was additionally awarded two weeks visitation during the summer. Child support was set at the statutory amount. The trial court awarded the parties' marital home to Ms. Owens. It further ordered Mr. Owens to pay, as alimony, the monthly house payment of $415 on the marital residence until the child turns 18 years of age. Mr. Owens filed a timely notice of Appeal to this Court.

### Issues Presented

Mr. Owens raises the following issues, as we re-state them, for our review:

(1)     Whether the trial court erred in its award of alimony.

(2)     Whether the trial court erred in determining child custody and the parenting plan.

### Standard of Review

We review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000). Because it is in the best position to assess witnesses, we afford the trial court considerable deference on matters of witness credibility. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999). Thus, we will not reverse the trial court's findings insofar as they are based on issues of witness credibility in the absence of clear and convincing evidence to the contrary. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Likewise, we review the trial court's determination of child custody under an abuse of discretion standard, affording the trial court great deference. *Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App.1996).

### Award of Alimony

The trial court awarded Ms. Owens alimony of $415 per month, an amount equal to the amount of the payment on the parties' marital home, until the parties' minor child reaches the age of 18 or until Ms. Owens remarries or any other appropriate change of circumstances which would require modification of the award. Mr. Owens argues the award of alimony is excessive and that it was not designated as any particular type of alimony.

When determining whether an award of alimony is appropriate, courts must consider the statutory factors set out in Tennessee Code Annotated § 36-5-101(d). We historically have considered the need of the spouse seeking support and the ability of the other spouse to provide such support to be the most important factors. *E.g.*, *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). We review an award of alimony under an abuse of discretion standard. *Herrera*, 944 S.W.2d at 385. If a discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt University*, 21 S.W.3d 215, 223 (Tenn. Ct. App.1999).

As Mr. Owens submits, the trial court did not label the award of alimony as any particular type. Upon review of the record, we agree that an award of alimony *in futuro* is not appropriate in this case. At the time of the trial of this matter, Mr. Owens was 34 years of age and earned $3,700 per month in net income as an engineer. Ms. Owens was 32 years of age at the time of trial, holds an associate degree, and is a certified X-ray technician and architectural draftsperson, although she has never worked as a draftsperson. Ms. Owens returned to work on a part-time basis when the parties' child was seven or eight months of age, and works between 24 and 30 hours a week as an x-ray technician at an hourly wage of $12. Thus, Ms. Owens wages amount to $288 to $360 per week, or $1,152 to $1,440 per month. Additionally, Ms. Owens testified that she intends to return to full-time employment. There is nothing in the record to suggest that Ms. Owens is unable to achieve economic self-sufficiency or needs alimony *in futuro*.

The legislature has clearly stated a preference for rehabilitative alimony designed to enable an economically disadvantaged spouse to attain economic self-sufficiency. Tenn. Code Ann. § 36-5-101(d)(1); *Crabtree v. Crabtree*, 16 S.W.3d, 356, 358 (Tenn. 2000). Further, although a disparity in income between the parties is a factor in determining whether a spouse is economically disadvantaged, it is not the sole factor in determining whether rehabilitation is feasible. *Avery v. Avery*, No. M2000-00889-COA-R3-CV, 2001 WL 775604, at *17 (Tenn. Ct. App. July 11, 2001)(*no perm. app. filed*). Moreover, in light of the legislative preference for rehabilitative alimony, a trial court's award of other types of alimony based solely on income disparity rather than on a determination that the disadvantaged spouse could not be rehabilitated was outside the scope of the trial court's discretion under the Tennessee Code as it existed when this matter was heard. *Id.* at n. 26 (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

The legislature recently amended the Tennessee Code and added transitional alimony as a specific type of alimony. Tenn. Code Ann. § 36-5-101(d)(1)(D)(Supp. 2003). Transitional alimony may be "awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection." *Id.* Prior to this statutory amendment, the courts awarded rehabilitative alimony in order to ease a disadvantaged spouse's transition to economic self-sufficiency where such self-

sufficiency was possible without additional education, training, or rehabilitation. *Crabtree*, 16 S.W.3d at 360-61; *Avery*, 2001 WL 775604, at *18.

The trial court heard the matter now before us prior to the effective date of the amendment adding transitional alimony to the list of the types of alimony specifically recognized by the legislature. Although alimony *in futuro* is not warranted in this case, we believe an alimony award designed to ease Ms. Owens' transition to economic self-sufficiency is appropriate. We accordingly modify the trial court's award and award Ms. Owens rehabilitative alimony of $415 per month for a period of five years.

### Child Custody and the Parenting Plan

Mr. Owens submits the trial court erred in determining child custody and the parenting plan. He contends the trial court considered evidence not in the record to make its determination and that the court did not base its determination on the statutory factors. Mr. Owens submits that the temporary order of August 2002 should be reinstated, and that the parties should have equal custody. We review the trial court's determination of child custody under an abuse of discretion standard, affording the trial court great deference. *Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App.1996). This Court will not interfere with the trial court's determination absent a palpable abuse of discretion or unless the judgment is against the great weight of the evidence. *Id.* at 386. This deferential review is premised on the assumption that the trial court first considered the best interests of the child in making the custody determination and did not act arbitrarily. *Id.* In making a custody determination, the trial court must engage in a comparative fitness analysis of the parents. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App.1996). In so doing, it must consider the factors outlined by the legislature as codified at Tenn. Code Ann. § 36-6-106. *Id.* Custody determinations are thus based on a combination of subtle factors, and require a factually based inquiry. *Id.* The trial court is in the best position to weigh the facts presented to it, and to assess the credibility of the parties. *Id.* Similarly, the details of visitation arrangements are within the discretion of the trial court. *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004). Although the trial court's discretion is not without limit and its determinations must be based on the evidence and appropriate legal principles, we will not disturb the trial court's determinations absent an abuse of discretion. *Id.*

Upon review of the record in this case, we cannot say the trial court abused its discretion in determining Ms. Owens should be the primary residential parent and in setting visitation. We accordingly affirm.

### Holding

We affirm the judgment of the trial court designating Ms. Owens as the primary residential parent of the parties' minor child and awarding Mr. Owens visitation. We modify the alimony award to an award of rehabilitative alimony of $415 per month for five years. This cause is remanded for entry of judgment consistent with this opinion. Costs of this appeal are taxed one-half to the

Appellee, Amy Owens, and one-half the Appellant, Ronald Owens, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE